TAGGED OPINION



**ORDERED in the Southern District of Florida on August 08, 2007.**

_____
A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-11263 BKC-AJC

In re:

JOEL V. MORGAN,

    Debtor.
_____/

### ORDER OVERRULING TRUSTEE'S OBJECTION TO CONFIRMATION

THIS CAUSE came before the Court on January 30, 2007 upon the Trustee's Objection to Confirmation. The Trustee's objection to confirmation is based on three issues raised by the Debtor's Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income also known as Form B22C ("CMI Form"). This hearing focused on one issue, to wit, whether the Debtor could claim a deduction on his CMI Form, line 25B, for a mortgage/rent expense.

1

**BACKGROUND**

The following facts are undisputed. The Debtor resides in a single family home titled in the name of his grandmother. The Debtor claims an ownership interest in the home through inheritance. The property is free and clear of all liens and encumbrances. The Debtor does not pay a mortgage on the property nor does he pay any rental expenses. He does, however, pay the utilities on the property, as he resides on the premises, and he also pays the ad valorem taxes on the property.

The Debtor filed a voluntary Chapter 13 petition after the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA"). The Debtor filed a CMI Form as required by BAPCA. The Debtor's CMI Form reflects that the Debtor is over the Florida median income, requiring him to determine his disposable income pursuant to pursuant to 11 U.S.C. §1325(b)(3). The Debtor therefore entered on the form the deductions allowed under 11 U.S.C. § 707(b)(2), as provided by 11 U.S.C. §1325(b)(3). Among others, he claimed a deduction of $911.00 for mortgage/rent expense using the Internal Revenue Service's Local Standards for a one-member household in Miami-Dade County, Florida. It is this line item to which the Trustee has objected, arguing that the housing expense deduction under the IRS' Local Standards could only be claimed by a debtor who actually pays that expense.

The Trustee argues that the Debtor cannot include an expense on the CMI Form which he does not actually have. The Debtor argues that, notwithstanding a debtor's actual situation, a debtor is permitted to claim the amount set forth in the IRS' Local Standards as Congress wished to create a uniform and fair test to determine a debtor's ability to pay. Both parties agree that the Court must look to the plain meaning of the statutory language of BAPCA for its ruling. "The

starting point for our interpretation of a statute is always its language. The plain meaning canon of statutory construction applies with equal force when interpreting the Bankruptcy Code." In re Yates Development, 256 F.3d 1285, 1288 (11th Cir. 2001). However, the parties disagree on the interpretation of the plain language of the statute.

## ANALYSIS

Because a Chapter 13 plan is funded by disposable income, a determination of the available amount of disposable income is significant. Disposable income is addressed in 11 U.S.C. § 1325. Section 1325(b)(2) defines disposable income as the debtor's income "less amounts reasonable and necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor". Section 1325(b)(3) states that "[a]mounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)" if the debtor's income is over the state's median income.

The Debtor's CMI Form demonstrates that the Debtor's income is above the state median. Therefore, the Court must look to 11 U.S.C. § 707(b)(2) to determine the Debtor's disposable monthly income. Section 707(b)(2)(A)(ii)(I) states:

> The debtor's monthly expenses *shall be* the debtor's *applicable monthly expense amounts specified* under the National Standards and Local Standards, and the debtor's *actual monthly expenses* for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . .

11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

The determination of whether the Debtor is allowed a deduction for a mortgage/rental expense, when he does not actually pay one, depends upon the meaning of the phrase "*applicable monthly expense amounts specified under the National Standards and Local Standards,*" as

expressed in 11 U.S.C. § 707(b)(2)(A)(ii)(I). The Debtor argues that the term "applicable" simply means that the Local Standard to be applied shall depend on the size of the Debtor's household, as well as the state wherein the Debtor resides. The Trustee counters that the term "applicable", as it relates to the monthly expenses, means that the Local Standard shall be applied only when such a payment is being made. Put another way, the Trustee argues that "applicable monthly expenses" means the same thing as "actual monthly expenses".

Upon review of the case law and the language of the applicable statutes and guidelines, the Court is persuaded that the plain meaning of the phrase "applicable monthly expenses" found in section 707(b)(2)(A)(ii)(I) of the Bankruptcy Code entitles the Debtor to deduct from current monthly income the Local Standard allowance for housing/rental expense, without regard to whether the Debtor actually pays a housing/rental expense. *See* Wedoff, *Means Testing in the New §707(b)*, 79 Am. Bankr.L.J. 231.

    A.  **The National and Local Standards**

The National and Local Standards to which 11 U.S.C. § 707(b)(2)(A)(ii)(I) refers are the Collection Financial Standards used by the Internal Revenue Service ("IRS") to determine a taxpayer's ability to pay a delinquent tax liability. The National Standards set amounts for five expenses: (1) food, (2) housekeeping supplies, (3) apparel and services, (4) personal care products and services, and (5) miscellaneous. The National Standards are based on the taxpayer's gross income and family size.

The Local Standards set separate amounts for (1) housing and utilities, and (2) transportation. The housing component is further divided into two categories: (a) rent/mortgage expenses; and (b) housing and utility expenses. The Local Standards housing deductions are

based on the taxpayer's family size and location.

Under the Financial Analysis Handbook in the Internal Revenue Manual ("IRM"), the taxpayer is allowed the full amount of the *National* Standards deductions for tax purposes, regardless of his actual expenses.  IRM at 5.15.1.8 ¶ 2.  Thus, "even hypothetical taxpayers living in a Garden of Eden, with cost-free satisfaction of all their basic needs, would still be allowed a deduction . . . set out in the National Standards." *In re Fowler*, 349 B.R. 414, 417 (Bankr. D. Del. 2006) (citing Wedoff, *Means Testing in the New §707(b)*, 79 Am. Bankr.L.J. at 254).  On the other hand, when applying the Local Standards for tax purposes, "[t]he taxpayer is allowed the local standard or the amount actually paid, *whichever is less."* IRM at 5.15.1.7 ¶ 4 (emphasis added).

## B.  Plain language of 11 U.S.C. § 707(b)(2)(A)(ii)(I)

The starting point for the court's inquiry is the statutory language of 11 U.S.C. §707(b)(2)(A)(ii)(I) itself.  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *Toibb v. Radloff*, 501 U.S. 157, 160 (1991); *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241-42 (1989); *U.S. v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1998) (en banc) ("In construing a statute we must begin, and often should end as well, with the language of the statute itself.").  It has been well established that "when the statute's language is plain, the sole function of the court, at least where the disposition required by the text is not absurd, is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotations omitted).  A result will only be deemed absurd if it is unthinkable, bizarre or demonstrably at odds with the intentions of its drafters.  *See In re Spradlin*, 231 B.R. 254, 260 (Bankr. E.D. Mich. 1999) (citing *Public Citizen v. Dept. of Justice*, 491 U.S. 440 (1989)).

However, as often happens with statutory language, the "plain" meaning of a statute can have different and competing interpretations. *See In re Benedetti*, 2007 WL 2083576 (Bankr. S.D. Fla. July 13, 2007). Statutory terms, though, are not to be read in isolation; they are to be read while looking to the provisions as a whole. *In re Welzel*, 275 F.3d 1308, 1317 (11th Cir. 2001).

The Debtor argues that the plain language of section 707(b)(2)(A)(ii)(I) permits the Debtor to take the Local Standards mortgage/rent deduction of $911.00 per month. The Trustee however, contends that because the Debtor has no actual monthly mortgage or rental expense, the Debtor is not entitled to take the Local Standards deduction. Ultimately, the determination of whether the deduction is allowed depends upon the meaning of the phrase "*applicable* monthly expense amounts specified under the National Standards and Local Standards," as expressed in 11 U.S.C. § 707(b)(2)(A)(ii)(I).

### C. Case law interpreting the "plain" meaning of 11 U.S.C. § 707(b)(2)(A)(ii)(I)

While only a few courts have addressed the Local Standards deduction with regard to housing, bankruptcy courts across the country have faced this issue with regard to the transportation deduction under the Local Standards. Generally, courts are split on the reading of the term "applicable monthly expenses." On one side are the courts which deny the use of the ownership allowance where the debtor owns a vehicle free and clear of liens. *E.g. In re Slusher,* 2007 WL 118009, at *14 (Bankr. D. Nev. Jan.17, 2007); *In re Devilliers,* No. 06-10415, 2007 WL 92504, at *14 (Bankr. E.D. La. Jan.9, 2007); *In re Harris,* 353 B.R. 304, 309-10 (Bankr. E.D. Okla. 2006); *In re Oliver,* 350 B.R. 294, 301 (Bankr. W.D. Tex. 2006); *In re Carlin,* 348 B.R. 795, 797 (Bankr. D. Or. 2006); *In re Wiggs,* 2006 WL 2246432, at *3 (Bankr. N.D. Ill.

Aug.4, 2006); *In re Lara,* 347 B.R. 198, 201 (Bankr. N.D. Tex. 2006); *In re Barraza,* 346 B.R. 724, 727-29 (Bankr. N.D. Tex.2006); *In re McGuire,* 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006); *In re Hardacre,* 338 B.R. 718, 728 (Bankr. N.D. Tex. 2006).

On the other side are the courts which permit a debtor who owns a vehicle free of liens to take the ownership allowance. *E.g., In re Fowler*, 349 B.R. 414, 417 (Bankr. D. Del. 2006); *In re Hartwick,* 352 B.R. 867, 868-69 (Bankr. D. Minn. 2006); *In re Demonica,* 345 B.R. 895, 905 (Bankr. N.D. Ill. 2006); *In re Grunert,* 353 B.R. 591, 594 (Bankr. E.D. Wis. 2006); *In re Sorrell,* 2007 WL 211276, at * 17 (Bankr. S.D. Ohio Jan 26, 2007); *In re Zak,* 2007 WL 143065 at *7 (Bankr. M.D. Ohio Jan. 12, 2007); *In re Crews,* No. 06-10422C-13G, 2006 WL 3782865, at *1 (Bankr. M.D.N.C. Dec. 22.2006); *In re Wilson,* 356 B.R. 114, 119 (Bankr. D. Del. 2006); *In re Haley,* 354 B.R. 340, 344 (Bankr. D.N.H. 2006); *In re Prince,* No. 06-10328C-7G, 2006 WL 3501281, at *4 (Bankr. M.D.N.C. Nov. 30, 2006).

### 1. Unavailability of Local Standards

The cases supporting the Trustee's position have interpreted the plain language of the statute as prohibiting the use of the ownership allowance where the debtor owns a vehicle free of liens. In *Wiggs,* the court determined that "the language of the statute is clear and unambiguous." 2006 WL 2246432 at *2.  It found that "the term 'applicable' modifies the amounts specified to limit the expenses to only those that apply." *Id.*  The court stated that interpreting the statute as allowing every debtor to claim the full ownership amount would make the term "applicable" "superfluous." *Id.*  Accordingly, the court held that the debtor was not allowed to take the ownership allowance when the debtor did not have a vehicle payment. *Id.* at 3.

Other courts which have not allowed deductions under the Local Standards have relied upon the IRS publications for guidance in determining when and how to apply the Local Standards deduction. For example, in *Hardacre,* 338 B.R. at 728, the court denied confirmation of the debtors plan, relying *only* on the IRS' application of the Standards. *Id.* The court explained that "[t]he Collection Financial Standards prohibit the deduction claimed by the debtor" and, therefore, they do not permit a debtor to claim an ownership deduction for a vehicle owned free and clear by the debtor. *Id.* In *McGuire,* the court explained that "[a]*ccording to IRS publications* regarding the application of its standards . . . the ownership expense only applies to debtors who actually are obligated to pay a monthly loan or lease." 342 B.R. at 612. The court noted that because the IRS guidelines mandate that a taxpayer cannot claim an IRS ownership expense for a vehicle they own free and clear, the same was true for debtors in bankruptcy. *Id.* at 613. According to the *McGuire* court, this was the proper reading of section 707(b)(2)(A)(ii)(I) because, "if a debtor does not own or lease a vehicle, the ownership expense is not "applicable" to that debtor . . . [an interpretation that] conforms with the IRS's application of the Standards." *Id.*

### 2. Local Standards Available as Fixed Allowances

The interpretation by courts which hold "applicable" to mean "actual" has been criticized on two grounds. First, these decisions look for guidance in the IRS manuals, which manuals state that the expenses in question cannot be claimed if a *taxpayer* has not incurred them. However, section 707(b)(2)(A)(ii)(I) "nowhere incorporates wholesale all IRS criteria for tax collection matters." *In re Farrar-Johnson,* 353 B.R. 224, 231 (Bankr. N.D.Ill. 2006). Indeed, "the statute is what matters (and if necessary the legislative history), not internal IRS manuals." *Id. See, e.g.,*

*Fowler*, 349 B.R. at 420 (refusing to follow *Hardacre* line of cases as they "*relied on the IRM, not the Bankruptcy Code*, to conclude that the deduction is allowable only for cars that are subject to a lease or purchase obligation") (emphasis added); *In re Barrett,* 2007 WL 2021998 at *2 (Bankr. S.D. Ill. July 10, 2007) ("there is no authority in the Bankruptcy Code for using the Internal Revenue Manual when interpreting § 707(b)(2)(A)(ii)(I)); *In re Swan,* 2007 WL 1146485 at *6 (Bankr. N.D. Cal. Apr. 18, 2007) ("[n]one of the courts using the IRS publications in reaching their decisions cited any specific authority for doing so, but simply found it 'instructive' to do so"); *Haley,* 354 B.R. at 344 (the IRS and the Bankruptcy Code use the ownership expense for different purposes); *Hartwick,* 352 B.R. at 870 (IRS directive has no application to determining the debtor's applicable expense amounts as part of the means test because IRS' use of the Local Standards is the opposite of that mandated by BAPCPA, that is the applicable IRS allowed amount is either the Standard amount or actual amount, whichever is lower).

A second criticism of the cases disallowing the deduction for debtors owning their vehicles free and clear is that some of the decisions define the word "applicable" in section 707(b)(2)(A)(ii)(I) to mean "actual." *See Wiggs,* 2006 WL 2246432, at *2; *McGuire,* 342 B.R. at 613. In doing so, however, they fail to reconcile or explain the presence of the word "actual" later in the same sentence. In contrast, the courts allowing the deduction point out that the use of "actual" with respect to Other Necessary Expenses and "applicable" with respect to the National and Local Standards must mean that Congress intended two different applications. *See Fowler*, 349 B.R. at 418 (citing *Duncan v. Walker,* 533 U.S. 167, 173 (2001) ("where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is

generally presumed that Congress acted intentionally and purposely in the disparate inclusion or exclusion")); *Grunert,* 353 B.R. at 594 (Congress drew distinction in the statute between "applicable" expenses on the one hand and "actual" expenses on the other – expenses under the Local Standards need only be those "applicable" to the debtor, based upon where he lives and how large his household is; it makes no difference whether he "actually" has them); *Demonica,* 345 B.R. at 902 ("to give effect to every word in [section 707(b)(2)(A)(ii)(I) ], the term 'actual monthly expenses' cannot be interpreted to mean the same as 'applicable monthly expenses'"); *In re Donald,* 343 B.R. 524, 537 (Bankr. E.D.N.C. 2006) ("use of a particular phrase in one statute but not in another 'merely highlights the fact that Congress knew how to include such a limitation when it wanted to'").

This Court believes the criticism is warranted and finds that section 707(b)(2)(A)(ii)(I) deems a debtor's expenses to be the "amounts specified" in the Local Standards. Because 11 U.S.C. § 707(b)(2)(A)(ii)(I) provides that the debtor's allowed expenses "shall be" the "amounts specified" under the Local Standards – and because the statute makes no provision for reducing the specified amounts to the debtor's actual expenses – a plain reading of the statute would allow a deduction of the amounts listed in the Local Standards even where the debtor's actual expenses are less. Wedoff, *Means Testing in the New 707(b)*, 79 Am. Bankr. L.J. 231, 257-58 (2005). *See also* 6 Collier on Bankruptcy ¶ 707.05(2)(c)(i) (A. Resnick and H. Sommer, eds., 15th ed. Rev. 2005) ("The better view is that, because the language refers to deducting the 'amount specified' in the standards, and not actual expenses, the ownership allowance specified in the standards is the minimum amount to be deducted.").

Although only a few courts have addressed the housing expense deduction directly, this Court believes the better reasoned cases are those which permit the deduction as a fixed allowance. In *Farrar-Johnson,* 353 B.R. at 224, the debtors lived in army housing and reported no mortgage or rent payments. However, on their CMI Form, the debtor claimed the Local Standards mortgage/rent deduction. The *Farrar-Johnson* court explained that "[r]ead in isolation, 'applicable' is ambiguous, meaning simply: 'That can be applied; appropriate.' *Id.,* (citing American Heritage Dictionary 89 (3rd ed.1996)). The court then explained that an expense could be "appropriate" for a debtor to claim because he actually incurs that expense, or, conversely, because he lives in a certain state and county and has a household of a certain size.

The court noted that 11 U.S.C. § 707(b)(2)(A)(ii)(I) defines monthly expenses not only as a debtor's "*applicable* monthly expense amounts" under the National and Local Standards but also as the debtor's "*actual* monthly expenses" for the categories the IRS specifies as "Other Necessary Expenses." 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). The *Farrar-Johnson* court found that by using two different terms within the very same sentence, Congress drew a distinction in the statute between "applicable" expenses on the one hand and "actual" expenses on the other. *Farrar-Johnson,* 353 B.R. at 230. "Other Necessary Expenses" must be the debtor's "actual" expenses, while expenses under the Local Standards need only be those "applicable" to the debtor because of where he lives and how large his household is. *Id.* The *Farrar-Johnson* court held it makes no difference whether the debtor actually has the expenses listed in the Local Standards for them to be "applicable". *Id.* at 231. This Court agrees.

In *In re Naslund,* the court also addressed the housing expense deduction under the Local Standards. 359 B.R. 781 (Bankr. D. Mont. 2006). In *Naslund,* the debtor's actual monthly rent

payment was $545 but the debtor claimed a deduction of $722 on Form B22C, the appropriate IRS Housing and Utility Local Standard. 359 B.R. at 791. The court agreed with the debtor that actual monthly expenses are *only* considered for the categories specified as Other Necessary Expenses, and explained that "the term "applicable" in section 707(b)(2)(A)(ii) clearly references the National and Local Standards that apply to a particular debtor as determined by the debtor's family size and place of residence. *Id.* at 791-92. *See also, Swan,* 2007 WL 1146485 at *8 (following the *Farrar-Johnson* and *Naslund* courts, the court held that debtor could claim full amount under Local Standards even though actual rent was lower); *In re Barrett,* 2007 WL 2021998 at *2 (Bankr. S.D. Ill. July 10, 2007) (same). *Contra In re Rezentes,* 2007 WL 988055 at *6 (Bankr. D. Haw. Apr. 2, 2007) (following *Hardacre,* the court held that "for purposes of calculating projected disposable income, debtors may deduct the local standard housing expense or their actual housing expense, whichever is less").

The Court is persuaded by the reasoning in *Farrar-Johnson* and *Naslund* and finds the term "applicable", as used in the statute, does not mean "actual" with respect to monthly expenses.

### D. Legislative history of § 707(b)(2)(A)(ii)(I)

This Court agrees with those courts which have cited BAPCPA's legislative history as supporting the use of Local Standards as a fixed allowance rather than a cap. If Congress had intended to adopt wholesale the language and intent of the IRS publications, it could have done so explicitly. Congress did not. The fact that Congress chose to use the term applicable instead of actual is proof that Congress chose a fixed and rigid standard instead of one that reflects the

debtor's actual position. *See Fowler*, 349 B.R. at 418; *Grunert,* 353 B.R. at 594; *Demonica,* 345 B.R. at 902; *Prince,* 2006 WL 3501281, at *2.

The *Fowler* court noted that in a prior version of BAPCPA that was not passed, Congress defined "projected monthly net income" to require the following calculation of expenses: (A) the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance . . . as determined under the Internal Revenue Service financial analysis for expenses in effect as of the date of the order for relief. 349 B.R. at 419 (quoting H.R. 3150, 105th Congress (1998)). However, the language referring to the IRS financial analysis was changed to the current language of section 707(b)(2)(A)(ii)(I), which simply provides that the debtor can take the "applicable monthly expense amounts specified under the National and Local Standards." *Id*. The court concluded that this change from the prior version requiring the use of the IRS financial analysis to the current version "evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusions that it should look only to the amounts set forth in the Local Standards." *Id.*

The *Farrar-Johnson* court also noted that the legislative history of 11 U.S.C. § 707(b)(2)(A)(ii)(I) evidences a desire to make the means test rigid, inflexible, and not reflective of the debtors actual circumstances. 353 B.R. at 231. In fact, the court explained, "eliminating flexibility was the point: the obligations of chapter 13 debtors would be subject to 'clear, defined standards,' no longer left 'to the whim of a judicial proceeding.'" *Id. See also*, *Hartwick,* 352 B.R. at 870 (explaining that "a major objective of the legislation was to remove judicial discretion from the process" and that the means test therefore "presents a backward looking

litmus test performed using mathematical computations of arbitrary numbers, often having little to do with a particular debtor's actual circumstances and ability to pay a portion of debt")

The Debtor's position is further supported by the Official Forms. The forms mandate use of the IRS figures as straight allowances, not as caps on actual expenses, for all IRS categories except Other Necessary Expenses. The Rules Committee noted that "[e]ach of the amounts specified by the IRS in the Local Standards are treated by the IRS as a cap on actual expenses, but because § 707(b)(2)(A)(ii)(I) provides for deduction in the amounts specified under the Local Standards, the forms treat these amounts as allowed deductions." *See* Advisory Committee Notes on Forms, http://www.uscourts.gov/rules/BK_Forms_06_Official/Form_22A-C_CN_Cum_1006.pdf. The Official Forms, like the Interim Bankruptcy Rules, were promulgated by the Rules Committee and approved by the Judicial Conference of the United States. Both the Rules and the Official Forms share the presumption of validity. *See, e.g.,* FRBP 1001; *In re Dominguez*, 51 F.3d 1502 (9th Cir. 1995) (Bankruptcy Rules presumptively valid); *In re Cluff*, 313 B.R. 323, 335 n.37 (Bankr. D. Utah 2004) (Official Forms, which are created for the same reasons as the Bankruptcy Rules, should be awarded the same deference and weight).

The Court believes it significant that, in structuring the means test, Congress established a formula for computing a debtor's monthly income which can establish a substantial fictitious monthly income for a debtor who has lost a job and has no monthly income whatsoever. Surely, the intent to create a fiction relating to income that creates an extremely adverse circumstance for a debtor suggests that application of a fictitious standard that creates a beneficial circumstance for a debtor was likewise intended.

### E. Policy Considerations

If the Court were to accept the Trustee's position and cap Debtor's housing deduction on the CMI Form at his actual expense, it would have the effect of locking Debtor into that expense for the duration of the Chapter 13 Plan. Such a result would be unfair to the Debtor because it is possible that the Debtor's housing expense will not remain at the current level throughout the Plan term. As one court noted "[c]ircumstances inevitably change. Rents generally go up. People move." *Swan,* 2007 WL 1146485 at *7. Requiring Debtor to modify his Plan if he moves or if he incurs a rent increase after he moves is inconsistent with BAPCPA, and is terribly inefficient. The standardized deduction provided in the language of BAPCPA is far more efficient.

Additionally, acceptance of the Trustee's position would create an incentive for debtors to relocate to enable them to spend the full amount of the allowable housing deduction on their housing expense. If presented with the choice of living in a house or apartment that costs $900 (the rough amount allowed under the Local Standards), or one that costs nothing but requires being tethered to a plan that makes no allowance for a possible relocation, a debtor might likely choose the former. For the courts to promote such a choice would be irresponsible. *See Swan,* 2007 WL 1146485 at *7 (not giving debtor full amount of housing allowance, as a matter of course, will encourage debtors to move in order to spend full amount).

### CONCLUSION

In light of the well reasoned analysis of the case law set forth herein, the Court is persuaded the Debtor is allowed a deduction for the mortgage/rental expense. The plain meaning of the statute and its use of the term "applicable" instead of "actual" evidences Congress' intent to set the Local Standards as a fixed allowance rather than a cap. The Court must assume that

Congress said what it meant and meant what it said. Had Congress wished the Standards to act as a cap rather than an allowance, it knew what language to use.

Although the Court finds that the plain language of the statute is clear, even if it was ambiguous, the result would not change. Where a statute is ambiguous, a court may look to the legislative history for guidance to determine Congress' intent. In contrast to the IRM, Congress included no reference in the final BAPCPA language to the use of the Local Standards as a cap, signifying that it did not intend the Local Standards to be applied as such.

Finally, use of the Standards as a fixed allowance recognizes BAPCPA's goal of removing or minimizing judicial discretion when applying the means test, allowing for a quick and formulaic analysis of the Debtor's disposable monthly income. It also allows the most efficient formula because it looks to the future and allows the debtor to have access to funds should their circumstances change through an increase in rent or relocation to a new residence. Were the Debtor only allowed the lesser of his actual expenses or the Standards amount, he would incur substantial expense with even the slightest of altered circumstances and expenses.

Treating the Local Standards deduction as a fixed allowance rather than a cap on actual expenses is supported by the plain meaning of the statute, the legislative history, and carefully reasoned case law. This Court therefore respectfully disagrees with the line of cases that has determined that debtors must have a housing payment to claim the Local Standards deduction. Thus, for the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Trustee's Objection to Confirmation of the Debtor's Chapter 13 plan is OVERRULED in part, and the Debtor is allowed the Local Standards deduction for a mortgage/rental expense, notwithstanding the fact he pays no mortgage

payment or rental obligation. The Trustee's objection is reset for further hearing on **August 28, 2007 at 1:30** PM in Courtroom 1410, 51 SW First Ave., Miami, FL to consider the remaining objections to confirmation.

# # #

Copies furnished to:

Nancy Herkert, Esq., Chapter 13 Trustee
Amy Carrington, Esq.
Jordan Bublick, Esq.
Joel Morgan, Debtor